**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BMO HARRIS BANK N.A.,<br>           Plaintiff,<br><br>           v.<br><br>TALLY TRANSPORTATION, LLC<br>and HARRY LOUIS,<br>           Defendants. | No. 1:23-cv-10571-DLC |

## ORDER FOR REASSIGNMENT AND RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT

CABELL, Ch. U.S.M.J.

This matter arises from a dispute over a loan and security agreement ("the agreement") between defendant Tally Transportation, LLC ("TTL") and plaintiff BMO Harris Bank N.A. ("BMO"). BMO contends that TTL breached the agreement by failing to make monthly payments toward the purchase of equipment for TTL's business and that defendant Harry Louis ("Louis") breached an agreement guarantying TTL's payment ("the guaranty"). Presently pending before the court is BMO's motion for a default judgment against TTL and Louis (collectively, "defendants") (D. 13) in the amount of $99,103.42 under Federal Rule of Civil Procedure Rule 55(b)(2) ("Rule 55(b)(2)").[1] Finding, inter alia, a cognizable

---

[1] After BMO filed the motion, Louis filed a chapter seven petition for bankruptcy giving rise to an automatic stay as to Louis. The court extended the stay to TTL. (D. 18, 20). On May 13, 2024, BMO filed a notice of voluntary dismissal as to Louis, who was terminated as a party. Accordingly, the motion for a default judgment applies to TTL as the only remaining party.

breach of contract claim against TTL and damages in the amount of $99,103.42, I order that the case be redrawn for reassignment to a district judge and recommend upon reassignment that the motion for a default judgment be allowed in the amount of $99,103.42 against TTL.

## II.  LEGAL STANDARD

A court may enter a default judgment under Rule 55(b)(2) without a hearing if "[the] court has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object."  *Auctus Fund, LLC v. ERHC Energy, Inc.*, Civil Action No. 18-cv-10216-ADB, 2019 WL 1316749, at *2 (D. Mass. Mar. 21 2019) (citing *In re The Home Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002)).  Further, a hearing on damages is also not necessary if determining the judgment amount "involves nothing more than" making arithmetic computations from the record.  *Id*. at *3.

## III.  BACKGROUND[2]

On March 24, 2022, TTL entered into the agreement with BMO to purchase the equipment, which consists of a 2018 international line haul truck, and agreed to make monthly payments toward the

---

[2] The facts are drawn from the well-pleaded factual allegations in the complaint as well as affidavits and loan documents attached to the motion for a default judgment.

purchase price. (D. 1, ¶¶ 6, 9, 15) (D. 13-3, p. 6) (describing "the Equipment [as] being purchased").[3] Specifically, TTL promised to pay BMO $131,297 in 50 monthly payments commencing on May 10, 2022. (D. 13-3, p. 2). BMO delivered the truck to TTL on March 24, 2022.[4] (D. 13-3, p. 6).

The agreement provided certain remedies to BMO "[u]pon occurrence of an event of default." (D. 13-3, ¶ 5.2). An "event of default" under the agreement encompassed TTL's failure "to pay when due any amount owed" to BMO. (D. 13-3, ¶ 5.1). When an event of default occurred, BMO's remedies allowed it to declare: (1) the indebtedness "to be immediately due and payable"; (2) "all other debts" TTL owed BMO "to be immediately due and payable"; and (3) the "Agreement to be in default." (D. 13-3, ¶ 5.2).[5]

On November 10, 2022, TTL defaulted on the loan by failing to remit the minimum monthly payment. (D. 1, ¶ 12) (D. 13-2, ¶ 5). Further, despite repeated demands thereafter by BMO, TTL failed to pay the balance owed ($99,103.42) to BMO. (D. 13-2, ¶¶ 9-10). Further still, by affidavit, a BMO litigation specialist attested

---

[3] Although the complaint states that "TTL agreed to make monthly payments to [BMO] for *use* of the Equipment," the distinction between using the truck and purchasing the truck is immaterial for purposes of resolving the motion for a default judgment. The material issue is that TTL fell behind in the monthly payments, which constituted an event of default.

[4] It is not clear whether BMO has since repossessed the truck.

[5] The above is not a complete list of the remedies available in paragraph 5.2 of the agreement.

3

to the $99,103.42 overdue amount ("BMO affidavit") as set out in a loan damage calculator ("the loan calculation"). (D. 13-2, ¶ 9) (D. 13-5, p. 2). The loan calculation computed the $99,103.42 amount as of February 28, 2023. (D. 13-5). The calculated amount included accumulated interest, default fees, overdue payments, and late charges up to February 28. (D. 13-2, ¶ 9) (D. 13-5, p. 2).

Seeking to recover the $99,103.42 amount, BMO filed this action on March 14, 2023. The three-count complaint asserts a breach of contract claim against TTL (Count I), a breach of contract claim against Louis (Count II), and a replevin claim against TTL (Count III). The replevin claim seeks "possession of the unrecovered" 2018 international line haul truck. (D. 1, ¶ 23) (D. 1, p. 3) (wherefore paragraph requesting "possession of the unrecovered Equipment").[6]

On March 23, 2023, a process server personally served the summons and complaint on Louis at 45 North Street, Randolph, Massachusetts ("the Randolph address"). (D. 6). Importantly, the process server properly served TTL in care of Louis at the same

---

[6] By seeking a default judgment for money based on the overdue loan, BMO is not seeking to recover possession of the truck under the replevin claim. In Massachusetts, as elsewhere, "Replevin is an action for the recovery of *property* wrongfully taken or detained by another." *Allied Home Mortg. Capital Corp. v. Belli*, Civil Action, No. 07-cv-11597-NG, 2011 WL 13248374, at *6 (D. Mass. Mar. 3, 2011) (emphasis added); *see Archdiocese of San Salvador v. FM Intern., Inc.*, No. 05-CV-237-JD, 2006 WL 437493, at *10 (D.N.H. Feb. 23, 2006). It is therefore not necessary to address whether the replevin claim provides a specific, cognizable claim for relief.

4

time at the same address.[7]  (D. 5).  Despite proper service, the defendants did not file an answer or a motion to dismiss.  Having failed to plead or otherwise defend in this action, BMO requested, and the clerk issued, an entry of default under Rule 55(a).  The clerk mailed the entry of default to TTL at the Randolph address. (D. 12).

By first-class mail to the same address, BMO sent the defendants copies of the motion for a default judgment as well as the affidavits in support of the motion for a default judgment. (D. 13-7).  To date, TTL has not responded to the complaint or the motion to enter a default judgment.

## IV.  DISCUSSION

As noted, the following are required to enter a default judgment without a hearing:  jurisdiction; a specific, cognizable claim for relief; and fair notice to the defaulted party of its opportunity to object.  *Universitas Educ., LLC v. Granderson*, 98 F.4th 357, 377 (1st Cir. 2024) (citing *Home Rests.*, 285 F.3d at

---

[7] To explain, Federal Rule of Civil Procedure 4(h)(1)(B) ("Rule 4(h)(1)(B)") authorizes service on an LLC by delivering the complaint and the summons "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B); *see Bar-Or v. Opera Sol., LLC*, Civil Action No. 21-11565-FDS, 2022 WL 16573957, at *1 n.1 (D. Mass. July 8, 2022) (applying Rule 4(h)(1)(B), which permits service on "corporation, or a partnership, or other unincorporated association," to limited liability company). Louis is the sole member of TTL. (D. 1, ¶ 2). He is also TTL's resident agent. *See* https://corp.sec.state.ma.us/corpweb/CorpSearch/CorpSearch.aspx; *see also Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 871 (S.D. Tex. 2020) ("[G]overnmental websites are proper sources for judicial notice.").

114).  After addressing these matters seriatim, the court turns to the issue of damages.

A. **Jurisdiction**

"A court must have both subject-matter and personal jurisdiction to enter a default judgment." *Howarth v. Carsanaro Landscaping, Inc.*, No. 22-cv-10998-DLC, 2023 WL 5978298, at *2 (D. Mass. 2023). Subject matter "[j]urisdiction is determined based on whether it existed at the time the plaintiff filed the original complaint." *U.S. ex rel. Estate of Cunningham v. Millennium Labs. of Cal., Inc.*, 713 F.3d 662, 669 (1st Cir. 2013); *accord Dubose Dubose v. Massachusetts*, Civil Action No. 20-cv-11084-ADB, 2021 WL 1238421, at *7, n.9 (D. Mass. Apr. 2, 2021) ("subject matter jurisdiction is assessed as of the time the complaint was filed") (citing *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004)). The same date applies when assessing personal jurisdiction. *See Lynn v. Stross*, Case No. 3:19-cv-397-JR, 2019 WL 6481795, at *3 (D. Or. Oct. 7, 2019) ("[P]ersonal jurisdiction must exist at the time of filing."); *Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221, 236 (D.D.C. 2005) ("[P]ersonal jurisdiction is based on 'defendant's contacts with the forum state at the time the lawsuit was filed." (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991))).

1.  **Subject Matter Jurisdiction**

The complaint asserts diversity jurisdiction, which requires an amount in controversy exceeding $75,000 "exclusive of interest and costs." 28 U.S.C. § 1332(a). To that end, the complaint states that TTL owes BMO $99,103.42 as damages. *See generally Andersen v. Vagaro, Inc.*, 57 F.4th 11, 14-15 (1st Cir. 2023) (In deciding $75,000 threshold, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith."). The loan calculation verifies the good faith nature of the statement in the complaint by documenting TTL's failure to pay the $99,103.42 amount as of February 28, 2023, prior to the time BMO filed this action. Accordingly, the amount in controversy exceeds $75,000.

Regarding diversity of citizenship, the complaint describes Louis as a Massachusetts resident and citizen, who is domiciled in Massachusetts. (D. 1, ¶ 3). This is sufficient to show Louis' domicile as Massachusetts and, further, his citizenship as Massachusetts. *See BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691, 696 n.8 (1st Cir. 2023) (stating "[i]t is assumed, for example, that a person's current residence is also his domicile" (quoting 13E Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3612 (3d ed. 2023))); *id.* (stating "using term 'resident' in complaint rather than 'citizen' or 'domiciliary' does not preclude exercise of diversity

jurisdiction" (citing *León v. Mun. of San Juan*, 320 F.3d 69, 70-71 (1st Cir. 2003))).

As a limited liability company, TTL "takes the citizenship of all of its members." *Id.* at 696 ("[A]n LLC . . . takes the citizenship of all of its members."). Louis is the sole member of TTL. (D. 1, ¶ 2). TTL is therefore a citizen of Massachusetts. *See id.* (BRT Management LLC "established that it is a citizen of Massachusetts, because its sole member is a natural person who is a resident of Massachusetts.").

BMO is a national bank. As such, it "is a citizen of the state where it is 'located,' 28 U.S.C. § 1348," which "is 'the State designated in its articles of association as its main office.'" *McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 212 (1st Cir. 2012) (citation omitted); *accord Brown v. JPMorgan Chase & Co.*, Civil Action No. 22-11298-FDS, 2023 WL 3511363, at *1 n.2 (D. Mass. May 17, 2023) ("[N]ational bank 'is a citizen of the State in which its main office, as set forth in its articles of association, is located.'") (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006)). The complaint states that BMO has a principal place of business and an office in Chicago. It further recites that BMO is a citizen of Illinois. (D. 1, ¶ 1). Although the articles of association are not in the record, the facts uniformly point to Chicago as the location of the bank's main

8

office and Illinois as the state wherein BMO has its main office. Per the foregoing, complete diversity is established.

## 2. **Personal Jurisdiction**

"To establish personal jurisdiction in a diversity case, a plaintiff 'must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment.'" *Cap. Crossing Servicing Co. LLC v. Mapfre Praico Ins. Co.*, Civil No. 19-cv-11157-LTS, 2022 WL 20766366, at *5 (D. Mass. Nov. 9, 2022) (citation omitted). "The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016) (citation omitted).

TTL is headquartered in Massachusetts with a principal place of business at the Randolph address. (D. 1, ¶ 2); *see Donovan v. Amps Elec., Inc.*, Civil Action No. 22-cv-10989-ADB, 2022 WL 16639137, at *2 (D. Mass. Nov. 2, 2022) (summarily stating, in context of Rule 55(b)(2) motion, that "Court also has personal jurisdiction over Amps as it is a Massachusetts corporation headquartered in Waltham, Massachusetts"). As such, the court has personal jurisdiction over TTL. At the time BMO filed the complaint, the court also had personal jurisdiction over Louis, a Massachusetts resident and domiciliary who does business in the

Commonwealth. See *Howarth*, 2023 WL 5978298, at *2 (In "'paradigm' case, an individual is subject to general jurisdiction in her place of domicile . . . ."). Lending credence to these findings is the fact that "a substantial part of the events giving rise to the cause of action, including signing" the agreement, took place in Massachusetts.[8] (D. 1, ¶ 5).

In sum, the defendants are citizens of Massachusetts and BMO a citizen of Illinois. The complaint seeks damages in the amount of $99,103.42 in good faith, which represents the amount TTL owed on the loan, thereby satisfying the $75,000 amount in controversy requirement. Louis' residence and TTL's principal place of business are in Massachusetts. Subject matter and personal jurisdiction therefore exist.

**B.  Cognizable Claim for Relief**

Where, as here, the clerk issued an entry of a default under Federal Rule of Civil Procedure 55(a), it amounts to "an admission of liability." *Auctus*, 2019 WL 1316749, at *1 (citation omitted). The defaulting party thereby "conceded the truth of the factual allegations in the complaint as establishing the grounds for liability." *Universitas Educ., LLC v. Granderson*, 98 F.4th 357, 377 (1st Cir. 2024) (citation omitted); *accord Auctus*, 2019 WL 1316749, at *1. Taking these "well-pleaded factual allegations as

---

[8] To the extent a finding of personal jurisdiction over Louis is necessary, personal jurisdiction exists because he resides and conducts business in Massachusetts.

10

true," the "court 'may examine a plaintiff's complaint . . . to determine whether it alleges a cause of action.'" *Universitas Educ.*, 98 F.4th at 377 (quoting *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002)) (citation omitted); *see Sec. and Exch. Comm'n v. Esposito*, 260 F. Supp. 3d 79, 84 (D. Mass. 2017) (It is "appropriate to independently 'examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action.'") (citation omitted). It stands to reason that whether "the complaint state[s] a specific, cognizable claim for relief," *Home Restaurants*, 285 F.3d at 114, equates, in essence, to whether the factual allegations in the complaint state a cause of action.

To begin, the agreement dictates the application of Illinois law to the breach of contract claim against TTL. (D. 13-3, ¶ 7.6). "Under Illinois law, 'The elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.'" *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 522 (7th Cir. 2022) (citations omitted). Here, the signed agreement sets out: the agreement's material terms, namely, the purchase of the 2018 international line haul truck by TTL from BMO for a set amount ($131,297) paid in monthly installments; BMO's delivery of the truck; TTL's failure to make monthly payments; and BMO's

11

monetary loss.  (D. 1, ¶¶ 6-12, 15-17).  Per the foregoing, the complaint sets out a specific, cognizable breach of contract claim for relief.

**C.  Notice**

 Fair notice of an opportunity to object arises when, for example, a defendant is properly served "and was mailed copies of the return of service, notice of default judgment, and the Court's standing order on motions for default judgment." *Goldstein v. Nat'l Shoring LLC*, No. 1:23-cv-10924-JEK, 2024 WL 3416003, at *4 (D. Mass. July 15, 2024) (finding fair notice under these circumstances).  Similarly here, TTL was properly served with the summons and the complaint.  The clerk mailed TTL a copy of the entry of the default and the court's standing order regarding motions for default judgment.  (D. 12).  BMO also mailed the motion for the default judgment to TTL at the Randolph address.  (D. 14-1).  Hence, TTL received fair notice of its opportunity to object.

 In sum, the prerequisites for a default judgment exist: subject matter and personal jurisdiction, a specific and cognizable breach of contact claim against TTL, and fair notice to TTL of its opportunity to object.  *See Home Rests.*, 285 F.3d at 114.  The remaining issues are therefore whether to award BMO the amount of damages its seeks ($99,103.42) and whether a hearing is necessary to establish that amount.

**D.   Damages**

Although "a hearing may be required . . . to set damages when the amount is in dispute or is not ascertainable from the pleadings," it is not required when, for example, there is "no uncertainty about the amounts at issue; the complaint . . . contain[s] specific dollar figures," and "the court . . . received affidavits."  *Home Rests.*, 285 F.3d at 114 (finding no abuse of discretion by district court in entering default judgment without conducting damages hearing).  Thus, as indicated previously, "if arriving at the judgment amount involves nothing more than arithmetic—the making of computations which may be figured from the record—a default judgment can be entered without a hearing of any kind."  *Auctus*, 2019 WL 1316749, at *3.  In *Auctus*, the court awarded "precisely the amount in compensatory damages that Auctus ha[d] supported by affidavit."  *Id*. at *3 n.1  That amount was "ascertainable, at least as of January 25, 2019, from the" agreements, promissory notes, and exhibits Auctus submitted.  *Id.* at *3.

Here too, an arithmetic calculation supports the requested damages of $99,103.42.  The BMO affidavit and the loan calculation establish the specific amount ($99,103.44) TTL owed BMO as of February 28, 2024.  (D. 13-2, ¶¶ 9-10) (D. 13-5, p. 2).  The loan calculation sets out the arithmetic calculation to arrive at that amount.  The calculation entails adding outstanding amounts for

13

late fees, accrued and unpaid interest, default fees, the principal amount, and other related fees. *See, e.g., Seasons Hospice Found. v. R.S. Constr. and Remodeling, Inc.*, 2019 WL 2167696, at *1 (D. Mass. 2019) (setting out amounts of five items that, added together, totaled requested amount of $253.894.82 as sum certain damages). There is no uncertainty about the amount, the complaint contains the specific dollar figure, and there is no indication that TTL disputes the amount. *Cf. Home Rests*, 285 F.3d at 114 ("A hearing may be required, however, to set damages when the amount is in dispute or is not ascertainable from the pleadings.").

Consequently, BMO sufficiently established the outstanding amount owed ($99,103.42). Moreover, a damages hearing is not necessary to establish the amount.

## V. CONCLUSION

Based on the foregoing, this court orders the case redrawn for reassignment to a district judge and **RECOMMENDS**[9] upon reassignment that the motion for a default judgment (D. 13) be

---

[9] The parties are advised that, under Fed. R. Civ. P. 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the First Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Sec'y of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983).

**ALLOWED**, and that a default judgment enter in favor of BMO in the amount of $99,103.42.

/s/ Donald L. Cabell
DONALD L. CABELL, Chief U.S.M.J.

DATED: Aug. 8, 2024